Case number 22-7036. Kenneth Dickerson, appellant versus District of Columbia. Mr. Temple for the appellant. Ms. Ratchanaryu for the appellate. Good morning, Mr. Temple. Good morning. Can I proceed? Yes. Good morning, my name is Donald Temple and I represent Mr. Dickerson and we are asking this court to reverse remand the trial court in a summary judgment ruling on a 1981 claim that Mr. Dickerson was not discriminated against based upon the government's presentation in a restructuring of a high school here in the District of Columbia based on the child left behind that. The issue really is complex in some respects, but I'd like to narrow it to Mr. Dickson and Ms. Waits and the process by which Ms. Waits was hired by the District of Columbia and the decision-making of the exclusive decision-making of the superintendent of the schools, Ms. Reed, based on the sole factor of an LSRT committee report and the... I didn't see it in the briefs, but if I missed it, forgive me. Is the LSRT creature of statute, regulation, executive order, or is there a formal document that established the LSRT and establishes its composition and its authority in what way its recommendations have? The LSRT is a creature of policy and practice for every high school in the District of Columbia with no particular statutory designation as to its membership. It is composed of faculty and administrators or its weight. It is inserted in the policy and practice of the restructuring generally. And is it purely a creature created because of no child left behind that or was LSRTs, were they in existence before that? Before that, prior to that. Okay. That's what I thought because kids went to DC public schools and I remember that thought that preceded no child left behind. Thank you. So how are we to, I guess, cut to the chase. There were recommendations from the LSRT here and one of them related to new leadership. And it appears that that is what the district court relied on to impart, find that there was a legitimate non-discriminatory reason for Dr. Dickerson's determination. In the context of summary judgment, we're as well aware that inferences on factual questions are to be made in favor of the non-moving party. In this particular case, there are several critical fact issues that come into play for the court's purposes. And I would like to focus the court's attention to the element in the interest of time of pretext. And one is the question of leadership and the way that the court below interpreted it. The court below in this decision interpreted the question of the LSRT making a recommendation that there would be a broad-based removal of the assistant principals as well as the principal. However, if the court directs its attention to the actual LSRT member, which is dated May 13th, 2008, that particular memorandum speaks about various recommendations. The first recommendation is directed to the principal. The second recommendation discusses a partial reconstitution option. The partial reconstitution option is underscored and reiterated by this court, the lower court in fact, and the partial versus a whole reconstitution is that there would be discretion. That discretion would be in the context of the No Child Left Behind Act. And it's the plaintiff's view that that particular act says when you are making this structural decision, unlike a reorganization, but a structural decision in the context of that act, that act attributes some responsibility to ascertain whether or not the person that's being removed is relevant to the failure of that act. And in this particular situation, the trial court did not apply that reasoning in its assessment as to whether or not the school was qualified in its consideration of the removal, and not just the removal, the non-reapplication of Mr. Dickerson. Let me ask the question a different way. Let's suppose for the sake of argument that the LSRT recommendation was remove the principal, keep all of the assistant principals there, great, doing a perfect job, and the chancellor nonetheless terminated the whole leadership team. What difference would that really make where the LSRT recommendations you say are, there's no kind of statute or anything that gives them any weight. And you said earlier that the chancellor ultimately has ultimate authority and discretion. So what difference would it make really if the LSRT had said something different than what the chancellor did? It would make a difference to the extent that we're talking about the reason why Mr. Dickerson, an African-American male, was not hired versus Mrs. Waits was hired. And whether in that particular situation, if the stated reason, and the stated reason on this record, according to Ms. Poe's declaration in her unqualified deposition answers, was that the LSRT recommended that there will be a removal, and the court interprets that in its entirety, of the assistant principals. That's not what the recommendation was. So to answer the court's question, the fact of the matter is that the superintendent of the schools under this particular scenario does not have absolute unfettered discretion to fire people if it is going to violate the equal protection rights of a protected class employee. And can you give us your best evidence of racial animus? Because it seems that they removed the entire leadership team for a school that had been failing to meet its goals for five years. And so where's the racial animus when they've removed the entire leadership team, all of whom are relevant to the performance of the school? Judge Penn, if I may, the evidence in a employment situation is circumstantial and created by inference by virtue of the fact that there is no legitimate basis for that. And we examine that, to answer your question, to the pretext. First and foremost, the question of them removing the entire team is part one issue. They have that right to remove, obviously. However, in the context of No Child Left Behind and the test and we cited in our reason and our argument is the extent to which that person, those persons are relevant to leave failure. We're looking at a situation where in a high school, a Wilson High School in a five-year history, and you're looking at the question of whether for five years, why that conditions, you have to look at it. And we are arguing that you have to look at it in a particular context. And in the instance of Kenny Dickerson, not only was Kenny, there is not a single sentence in this record where Kenny Dickerson, an assistant principal, PhD candidate, Auburn dissertation has a negative blemish whatsoever. In fact, to the contrary. And so there was not a factual finding. Mr. Temple, isn't the blemish that the school has been failing for five years and they removed the whole leadership team and to the extent that he had performance evaluations, they were by the people who were failing the school. Your Honor, that's ironic to some extent, because it's to the court's question. If you have an assistant principal who's performing at the highest level of merit, exceeding expectations with supportive letters for a six-year period of time, then the fact that the school is failing may have something to do with something other than one individual who's making a contribution. The reason why that point is so significant is because in the process of making that decision, they totally minimized and did not consider Mr. Dickerson while simultaneously in a pre-selection process hiring a white woman to take his position. So the point is, is that it creates an inference, if that's not true, that he didn't. And the judge's question is, it leads to another point. Our problem is that the school system did not make an assessment as to whether or not Mr. Dickerson contributed. Rather, in a stereotypical manner, given the backdrop that it fired all the African-American principals and all the African-American principals and assistant principals all the principals and assistant principals were African-American, it then brought Mr. Dickerson into a stereotype that because the school was failing, that because he was part of the leadership without examining more, that he was contributing to the failure. This record shows, and I'll stop real quick, this record shows that at Wilson High School, there are a lot of problems with that school in terms of the background, the reading, the gang fighting, the other types of disciplinary issues that contributed to the failure beyond Mr. Dickerson. Mr. Temple, it seems important to make the argument that, so the school has said that restructuring is a legitimate non-discriminatory reason, and you're arguing now that the restructuring is not a legitimate non-discriminatory reason, but was that argument preserved below? I don't see where it was preserved before the district court. We did make that argument, Your Honor, that this restructuring as a broad-based absolute right was pretextual, and that it could not, given the context of the No Child Left Behind, and that's what we're really talking about, the No Child Left Behind statute, and the extent that it was, it has a provision that says that there has to be some relevancy to the disconnect of an individual and to implicate a particular individual in that process. But that doesn't go to step two of the McDonald-Douglas test, rebutting whether it was a legitimate non-discriminatory reason. Well, actually, that's step three in terms of, once the district established a legitimate business. Do you concede that it was a legitimate non-discriminatory reason? No, we rebutted that as a, in the pretext, and I want to make that fine line distinction, the restructuring is legitimate for the district to restructure it. There's no question about that. As it's applied, and as it eliminates a particular position in the application, we rebut that by way of pretext. The city, for example, says they talk about quality school review. They talk about the LSRT. Our argument is that there is an inconsistency in the WB6 witnesses' misposed testimony in this regard, in the pretext context, and her declaration, in addition to the evidence that the district relies on when it speaks about quality school review. But we note that the district says, inconsistently, that it relies upon a quality school review process and report. However, no such report, notwithstanding that the court suggested and even relied on it, no such report exists or was offered. What we have is multiple inconsistent testimony by the district in support of its removal of Mr. Dickerson. In addition to that, it's an absolutism. The district is saying that it has the absolute right, no matter what, if we allow that in every school district in the country, if we were concerned about our children, which is what the No Child Left Behind statute does, then a school district could come in and predominantly Black communities, like the District of Columbia, with the wave of a wand, say, we're going to restructure and remove employees like Kenneth Dickerson who committed his life to the education of children without any recourse and minimize him, basically put him in a place where he's essentially invisible. At no point did they consider his personnel record. At no point did they look at his personnel file. At no point did they evaluate him. His evaluations are missing. It was irrelevant to them. I would also underscore that the question that Judge Pan asked about the absolutism, the notion of the hiring, and in that report, and that May 13th document, in that report, they talk about partial, not absolute removal. But the idea was that partial was open, and if it was open, that it would be a reapplication process. Part of our argument is that that reapplication process did not exist. When Mr. Dickerson, by definition, was removed, there was nothing in that document that says that he could reapply, yet the government will argue that he could reapply. I thought that he said he did reapply. He tried to check a box or a list or something. I thought there was a dispute about this. Well, there's a disputed fact, and again, the point there is that he did not reapply. He was told that he could not reapply. It was not in the letter. Then they told him that the city argued that he could reapply, and then he went to the HR, and they told him he could not reapply. There's another dynamic that's in the record, given that the court's an over-review. Simultaneously, Dickerson finds out that he's been charged with misconduct at the Unemployment Authority, so he's dealing with that as well. There is nothing in this record that says that Dickerson could reapply. There was a posting that said, if you're interested, and he said, I stood on this posting and responded. He had a five-minute interview, but it was not specific to a formal reapplication for the assistant principal position. My time has, I think, elapsed. All right, we'll give you some time on rebuttal. Thank you. Thank you. Good morning, Ms. Rishinaru. Rishinaru, yes. Good morning, Your Honors, and may it please the court, Dia Rishinaru, on behalf of the District of Columbia. The only claim at issue in this case is Dr. Dickerson's claim for intentional discrimination under Section 1980, and as this court has previously stated, proof of an illicit motive is essential for a plaintiff to prevail on such. After 10 years of litigation and an opportunity to conduct discovery, Dr. Dickerson has simply not introduced any evidence of racial discrimination, and as Your Honors pointed out, the record is fairly clear here. The local school restructuring committee, sorry, team, so this is the team of parents, staff, administrators at the school, and also collective bargaining representatives, and they're appointed to provide recommendations, but as Your Honor pointed out, that those recommendations are not binding. They recommended an appointment of a new principal, a restructuring of school functions, so changing the structure of the school from the way that operated previously to now having individualized grade level academies, and I specifically said that the restructuring of these school functions would be made to allow the new principal to establish a new leadership team for the school. Do you just, housekeeping, do you agree with the characterization by your friend on the other side, the LSRTs are a creature of statute, regulation, executive order, policy? Yes, Your Honor. And did they proceed no child left behind? Yes, Your Honor, that's right. What do we do with the fact that I believe is it's undisputed that all of the principals and assistant principals that were terminated in this round were at primary? So there's a one principal in this, at Wilson, and she was an interim principal, so her position was always a one-year position, and then all of the four assistant principals were African-American, and so when the entire leadership team was removed, what about all the other ones that were removed? There's no evidence 19 or 20 or however many. So there's no evidence in the record about racial disparity in the removal of other principals or administrators. What do you mean there's no evidence in the record? Are you disputing that there were, the number is escaping me, I think it was like 19 or 22 principals and assistant principals lost their positions pursuant to restructuring, and they were all African-American. Are you saying that's not in the record? So I think it is in the record that a number of principals and assistant principals lost their positions. I don't think the race of each of those principals is in the record. So that was not presented as a undisputed fact at summary judgment? Yeah. So what of the, if at summary judgment if we're supposed to take all the inferences in favor of the non-movement, what of the argument that you could read the LSRT recommendations to really only specifically say remove the principal, and just because it says that principal could establish a new leadership team, be up to that principal to decide to retain someone like Dr. Dickerson, but it wouldn't have to necessarily mean that you had to clean house and get rid of all of the assistant principals too. Why isn't that a reasonable? Right, John, and the school restructuring plan itself specifically said that the assistant principals would not be reappointed, and then they would be able to reapply or apply just like anyone else, and Dr. Dickerson has conceded that after his non-reappointment, he did not apply for an assistant principal position at Wilson. He also says that he was told that he couldn't. So his evidence for that, your honor, is a conversation he had with an HR administrator, and if you look at JA 116, and this is his response to interrogatory 24, which asked whether he reapplied or not, he said the DCPS assistant director of HR, Jasmine Jose, informed me in person and on the phone in July 2008 that DCPS would not offer me an administrative level retreat rights position, which is not the same thing as stating that he was prevented from reapplying. What does that mean? If he didn't reapply, then he doesn't have any claim for discrimination on that basis, and your honor, they don't raise a failure to hire claim, and in order for them to have raised a failure to hire claim, they would have had to compare to have any sort of evidence of the qualifications of his replacement, and so they argued that, you know, Ms. Wade's was his replacement, and that's, you know, not clear from the record, but they have absolutely, and he to, what do you think that the, you said it was JA 116? 1116. I'm sorry. What do you think that the HR person was saying when they were speaking of retreat rights? So the code section 520, which gives the chancellor the right to reappoint or not reappoint, said that in the event of a non-reappointment, that administrator has the right to retreat to the last permanent position that they held, and so I can't just speculate to what that conversation was about, but this would to me read as a, you know, he did not have a permanent administrative level position that he could retreat to, or perhaps that there was none open that he could in the record drawing. So I do want to address, I guess, one point that was raised in the briefs, and this is an argument that was not made below, but I do think it merits a little bit of discussion, and this is this argument that Chancellor Rhee was somehow required to pick the least invasive option, or the option that created the least amount of change, and there's just nothing in the No Child Left Behind Act that requires that. In fact, if you look at the options presented, all of them are fundamental reforms to the school structure. So having the school be converted into a charter school or taken over by the state, this is because the goal of restructuring is to turn the school around and have it meet the goals, and this is a school that, you know, notwithstanding any of the other qualifications of its leadership, has failed to meet those goals and failed the students for five years. What role does the local law about, essentially, doesn't the local law obligate to hire the most qualified person for the position? So, yes, there is a requirement that decisions on hiring should be based on merit. There's no evidence in this case that Dr. Dickerson was the most qualified applicant. I'm sorry, I thought there were two different regulations. One is when you hire the person, you have to hire the best qualified one, and then once you're already hired, as Dr. Dickerson was, then retention and reappointment shall be at the discretion of the superintendent. Yes, Your Honor, and I'm sorry, I was conflating two things. So the actual decision whether to reappoint or not reappoint is at the discretion of the chancellor, and there's nothing in the then, you know, then that decision making would have been done on the basis of qualification. So can I ask you, because you said that there's no claim here about selection. So are we looking just at the fact that he was let go? Is that the action that we're looking at? Because it becomes confused because it appears there's also an allegation about his replacement. He was replaced by a white woman. And so I'm just trying to understand analytically, are we looking, is the discriminatory act the actual firing of Dr. Dickerson, or do we also consider what happened next, which was then they hired later a white woman? And this is a better question for the plaintiff, but my reading of the record is that he's alleged the entire time that the non-reappointment is a discriminatory action and that the hiring of Dr. Dickerson was a separate discriminatory action. But you're saying the non-reappointment, he fails because he didn't reapply. So he wasn't competing against her, or I'm trying to understand what your argument was about. This is not a reappointment. So if we were splitting these into two separate analyses, your honor, which I don't think that we should, because as you pointed out, I think the non-reappointment is the claim that's really at issue in this case. Then if, or if we were, so if he had actually reapplied, then we would do analysis of whether whatever reasons the district gave for him not hiring him again were legitimate or pretextual. But there's no case here that he was not rehired because he concedes that he didn't apply. He's never submitted another application to the assistant principal positions. Once he was not reappointed, he was as free as anyone else to submit an application and he concedes that he did not. And my understanding is there were four assistant principal positions and two of the people who were hired after the restructuring were African-American. How do we know that Ms. Waits is the one that replaced Dr. Dickerson? We don't, your honor. That's completely speculative. So if you look at the record, you see the emails from Principal Cahill, who was the principal that was appointed, Charlotte Butler, who is an African-American woman, who was actually the first assistant principal hired. And that was the emails from June 26th. So that's the information that we have in the record about what that hiring process was like. Thank you. Your honor, if you have no further questions. Thank you. Mr. Temple, we'll give you three minutes. Thank you. First of all, to the restructuring question, the restructuring is, it happens. However, this particular restructuring was governed by a particular federal statute, No Child Left Behind. It was distinguished from general restructuring. That meant the federal law actually applied. That federal law had the provision selected by the superintendent that the persons that would be removed would have some relevancy to the school's failure. That was a fact question. Our argument was that that decision was not made relative to the removal of Dr. Dickerson. The second point, though, was that the argument that Dr. Dickerson could have reapplied is contextual. If he's told, and this exposition is exactly that, and its policies and its defenses and its arguments, but yet it never told Dr. Dickerson that he reapplied. In fact, it didn't tell him in the writing, it didn't tell him when he went to HR, and it didn't post it. If you're interested, not in an assistant principal position, then you can sign up. So he was formally not told, and now they're saying that he should have been told, and it is our position is that he should have been told that he could have reapplied. It was not the absolute right to say we're going to remove him and then to hold him to a standard. That was different than it held to the comparator. As to Ms. Weiss, the reason why she's deemed a comparator is that Dr. Dickerson was the senior assistant principal in the absence of the then existing principal for five years. If that principal was not there, Dr. Dickerson would be assumed the responsibility for managing the school. That's exactly what the hiring process, which we also contend was a pre-selection. What you know is that Ms. Weiss was hired before the end date for Dr. Dickerson's termination, June 30th. But the record shows that she was hired at the recommendation of the new principal. Right. She was hired. The new principal emailed Chancellor Rhee and suggested her for a position, and Chancellor Rhee adopted that suggestion. Well, the problem with that, Your Honor, is that that circumvented the existing hiring practices, which are in the record in this post-deposition. There was a process by which candidates for assistant principals would be hired, and that same correspondence that the court refers to, there were 12 interviews. That may be the case, but I guess that's a separate issue from your arguing pretext in that like the fix was in, so to speak, she was pre-selected. But the pre-selection for your theory to work would have had to been by Chancellor Rhee. Well, Chancellor Rhee terminated Dickerson because she already had in mind that she was going to replace him with a white woman, but that theory doesn't work if the idea to hire the white woman came from the new principal. But the decision came from Chancellor Rhee. The decision that Chancellor Rhee made, knowing that that particular candidate's selection process circumvented the process for hiring, it was a subjective process. And as a result, there was a double standard in play, a standard by which... Well, pre-selection, I guess all I'm saying is pre-selection suggests that temporarily, when you made the decision to hire someone, you already have in mind who you're going to, who you're going to replace more. But this is a slightly variation of that, Judge, because the pre-selection actually, the determination decision was made on June 16th. The pre-selection decision was made on June 26th, 27th, and Mr. Dickerson's end date was June 30th. That's also, that shows at that particular point in time, the subjectivity in the process. Mr. Dickerson is told that he can't apply. There's a decision to have someone apply, whose decision is made outside of the established process and in violation of the statute. One final point is that the lower court's substantial similarity, similarity situated, excuse me, similarity situated comparison is not applicable here. And it's not, it's erroneous from a factual point of view. First of all, it's a jury question generally by case law. But secondly, the similarity situation dynamic here is generally, as it's argued by the city in its briefing, is in the hiring process. In a situation where you're hiring someone outside the process, it is as similarly situated as it can be, but it is not required to be similarly situated in terms of the traditional similarity situation case law. With that, Your Honor, thank you so much for your time. Thank you. We'll take the case under advice.
judges: Wilkins, Rao, Pan